IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

CRIMINAL NO. 23-130 (ADC)

v.

[5] LIGIA MARIA LEMUS DE PENTZKE
AKA LIGIA LEMUS LANUZA,
Defendant.

PLEA AND FORFEITURE AGREEMENT

TO THE HONORABLE COURT:



The United States of America, Defendant, Ligia Maria Lemus De Pentzke, and Defendant's counsel, Luis Rafael Rivera, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Counts One and Twenty-One of the Indictment:

Count One:

From on or about April 2020, through March 30, 2023, in the District of Puerto Rico, and elsewhere, defendant Ligia Maria Lemus De Pentzke did knowingly and intentionally combine, conspire, confederate and agree to devise a scheme and artifice to defraud and to obtain money and property from the United States Small Business Administration and Bank 1, by means of false and fraudulent

pretenses, representations and promises; and for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

Count Twenty-One:

Beginning no later than in or around April 2020 and continuing until March 30, 2023, in Puerto Rico, elsewhere, and within the jurisdiction of this Court, the defendant Ligia Maria Lemus De Pentzke knowingly conspired with others to commit offenses against the United States in violation of 18 U.S.C. § 1956 and 1957, to wit:



- to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, wire fraud, knowing the transactions were designed in whole and in part to conceal the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956 (a)(1)(B)(i); and

- to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, wire fraud, knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1956 (a)(1)(A)(i); and

- to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1957.

2. **Maximum Penalties**

Count One: The maximum statutory penalty for the offense charged in Count One of the Indictment is a term of imprisonment of 30 years and a fine not to exceed $1 million dollars pursuant to 18 U.S.C. § 1343, and a supervised release term of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1).

Count Twenty-One: The maximum statutory penalty for the offense charged in Twenty-One of the Indictment is a term of imprisonment of 20 years, a fine not to exceed $500,000 or twice the value of the property involved in the transaction, whichever is greater, pursuant to 18 U.S.C. § 1956(a), a supervised release term of not more than three years pursuant to 18 U.S.C. § 3583(b)(2), and a civil penalty not to exceed the greater of the value of the property, funds, or monetary instruments involved in the transaction or $10,000 pursuant to 18 U.S.C. § 1956(b)(1).

3. **Sentencing Guidelines Applicability**

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. §§ 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

### 4. Special Monetary Assessment

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

### 5. Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996. The parties agree that Defendant is responsible for $252,838.97 in restitution. The parties agree, however, that restitution is a matter for the Court to decide.

### 6. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

## 7. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.



| SENTENCING GUIDELINES CALCULATIONS<br>Count 1<br>18 U.S.C. §§ 1343, 1349 | |
|---|---|
| Base Offense Level pursuant to U.S.S.G. § 2B1.1(a)(1) | 7 |
| Loss amount greater than $250,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(G) | +12 |
| **TOTAL OFFENSE LEVEL Fraud** | **19** |
| **SENTENCING GUIDELINES CALCULATIONS<br>Count 21<br>18 U.S.C. §1956(h)** | |
| Base Offense Level pursuant to U.S.S.G. § 2S1.1(a)(1) | 19 |
| Conviction under § 1956 U.S.S.G. § 2S1.1(b)(2)(B) | +2 |
| **TOTAL OFFENSE LEVEL Money Laundering** | **21** |
| **SENTENCING GUIDELINES CALCULATIONS<br>Grouping Leadership Acceptance** | |
| U.S.S.G. §§ 3D1.2(d) and 3D1.3(b)<br>Highest Offense Level Applies | 21 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **18** |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| 27–33 | 30–37 | 33–41 | 41–51 | 51–63 | 57–71 |

## 8. Sentence Recommendation

As to Counts One and Twenty-One, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree to request a sentence of imprisonment within the applicable Guidelines range at a total offense level of 18 when combined with the criminal history category determined by the Court. However, if Defendant qualifies for the "Zero-Point Offender" reduction pursuant to § 4C1.1, the parties agree to request a sentence of imprisonment within the applicable Guidelines range at a total offense level of 16 when combined with the criminal history category determined by the Court.

The United States and Defendant agree that Defendant may submit evidence to the Court in support of a request for a departure from the agreed-upon guideline range based on the policy statement at U.S.S.G. Sections 5H1.1 (Age) and 5H1.4 (Physical Condition). The United States reserves the right to rebut any proffer or evidence provided by Defendant, and to request a guideline sentence as calculated in this plea agreement.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

## 9. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for Defendant.

### 10. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the sentence imposed by the Court is within or below the Guidelines range for the total offense level of 18 when combined with Defendant's criminal history category as determined by the Court, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

### 11. No Further Adjustments or Departures

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 12. Satisfaction with Counsel

Defendant is satisfied with counsel, Luis Rafael Rivera, Esq., and asserts that counsel has rendered effective legal assistance.

### 13. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:



a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

14. **Stipulation of Facts**

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

15. **Limitations of Plea Agreement**

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

16. **Entirety of Plea Agreement**

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

17. **Amendments to Plea Agreement**

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

18. **Dismissal of Remaining Counts**

At sentencing should there be any pending counts and should the Defendant comply with the terms of this Plea Agreement, the United States will move to

dismiss the remaining counts of the Indictment pending against Defendant in this case.

### 19. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

### 20. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

### 21. Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United

States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 22. Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

### 23. Forfeiture Provision

Defendant agrees to waive and forgo any interests or claims over all property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction charged in Count One of the Indictment, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), and all property, real or personal, involved in the offense of conviction charged in Count Twenty-One of the Indictment, and any property traceable to such property pursuant to 18 U.S.C. § 982(a)(1), including the following specific property:

- Oriental Bank Manager's Check ending in 7634 for the amount of $5,400, seized on or about August 25, 2022, from an account held in the name of Ligia Maria Lemus De Pentzke.

Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. Defendant agrees to consent to the entry of orders of forfeiture for such

property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise Defendant of this, pursuant to Rule 11(b)(1)(J), at the time Defendant's guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

Defendant, by agreeing to the forfeiture stated above, acknowledges that such forfeiture is not grossly disproportionate to the gravity of the offense conduct to which Defendant is pleading guilty. Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.

The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assignees until the agreed forfeiture, including any agreed money judgment, is collected in full.

W. Stephen Muldrow
United States Attorney

_____
Myriam Y. Fernández-González
Assistant U.S. Attorney
Chief, Asset Recovery & Money
Laundering Division

March 6, 2025
_____
Date

_____
Daniel J. Olinghouse
Assistant U.S. Attorney

3/10/25
_____
Date

_____
Luis Rafael Rivera, Esq.
Counsel for Defendant

26-3-25
_____
Date

_____
Ligia Maria Lemus De Pentzke
Defendant

26-3-25
_____
Date

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 3-26-25

x_____
Ligia Maria Lemus De Pentzke
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 3-26-25

_____
Luis Rafael Rivera
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant Ligia Maria Lemus De Pentzke admits that Defendant is guilty as charged in Counts One and Twenty-One of the Indictment and admits the following:

From on or about April 2020, through March 30, 2023, in the District of Puerto Rico, and elsewhere, defendant Ligia Maria Lemus De Pentzke:

1. did knowingly and intentionally combine, conspire, confederate and agree to devise a scheme and artifice to defraud and to obtain money and property from the United States Small Business Administration and Bank 1, by means of false and fraudulent pretenses, representations and promises; and for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343; and

2. knowingly conspired with others to commit offenses against the United States in violation of 18 U.S.C. § 1956, including:

- to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, wire fraud, knowing the transactions were designed in whole and in part to conceal the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956 (a)(1)(B)(i); and

- to knowingly conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, that is, wire fraud, knowing the property involved

in the financial transactions represented the proceeds of some form of unlawful activity with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1956 (a)(1)(A)(i); and

- to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1957.

Specifically, Defendant conspired to defraud the United States Small Business Administration by submitting and causing to be submitted false and fraudulent applications for COVID-19 relief funds issued under the authority of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act was a federal law enacted in early 2020 that was intended to provide emergency financial assistance to Americans suffering the economic effects caused by the COVID-19 pandemic.

The fraudulent scheme targeted two programs authorized under the CARES Act: The Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program. As a result of the scheme, 223 fraudulent PPP loans were processed, resulting in the disbursement of $5,915,290.33. The SBA also disbursed $3,105,300 in EIDL funds as a result of the scheme.

PPP loans were forgivable loans to small businesses for job retention and certain other expenses. To obtain a PPP loan, a qualifying business was required to submit an application signed by an authorized representative of the business. The application required the business to acknowledge the program rules and make certain

affirmative certifications. The business was required to provide, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

PPP loan applications were processed by participating financial institutions. If an application was approved, the participating lender funded the loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in processing the loan.

PPP loan proceeds could only be used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on the loan to be entirely forgiven if the business spent the loan proceeds on the allowable expenses within a designated period and used a certain percentage of the loan proceeds for payroll expenses.

EIDL loans were loans with favorable terms for certain businesses. To qualify for an EIDL loan, a business had to, among other requirements, be in operation prior to February 1, 2020. Applicants also had to certify that the information in the application was true and correct, under penalty of perjury and applicable criminal statutes. EIDL loan proceeds could only be used by the affected business for certain permissible expenses. The loans could be used to pay fixed

debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

EIDL applicants were required to provide information relating to the size and ownership of the affected business entity, and other information about the relevant business for the 12 months prior to COVID-19 impacting the national economy, such as the number of employees in the business, the gross business revenues realized, and the cost of goods sold. This information, submitted by the applicant directly to the SBA, was then used by SBA systems to calculate the amount of money the applicant was eligible to receive.

Numerous people were recruited to submit fraudulent PPP loan applications to Bank 1 and EIDL applications to the SBA. Defendant obtained PPP and EIDL loans totaling $80,300. Some of the people recruited also recruited other people to the scheme. Sometimes recruiters were paid a commission for recruiting additional people to the scheme.

The applications generally contained materially false and fraudulent information and supporting documentation, including Internal Revenue Service form 1040PR and Puerto Rico Department of Treasury form 480.6. The documents commonly reflected inflated income amounts for tax year 2019 which did not appear in true filings with the Puerto Rico Department of Treasury or the U.S. Internal Revenue Service. The applications also contained false statements and false representations regarding 2019 income and false certifications that the loans would be used for permissible business purposes.

Recruits whose loans were approved and disbursed were instructed to provide kickback payments to organizers of the scheme. The amounts differed but were generally around $5,000 per fraudulent loan obtained. Recruits often paid the kickbacks with checks, but sometimes they paid with cash. Over the course of the conspiracy, at least 154 kickback checks totaling $682,775.50 were provided. Defendant received at least four of those checks, which totaled $20,748.

The kickback transactions were designed to resemble bona fide business expenditures to disguise the true nature of the financial transactions, which were in fact remittances to organizers of the scheme which were not permissible under the PPP or EIDL programs. Disguising the transactions in this manner also helped further the goals of the wire fraud conspiracy and provided a basis for the SBA to forgive the loans. Defendant and co-conspirators collected the checks and cash and aggregated them for later distribution to members of the conspiracy.

For purposes of this Plea Agreement, the parties agree that Defendant is responsible for a loss amount of greater than $250,000, but less than $550,000.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt.

At trial, the United States would have proven beyond a reasonable doubt that defendant Ligia Maria Lemus De Pentzke is guilty as charged in Counts One and

Twenty-One of the Indictment. Discovery was timely made available to Defendant for review.

_____
Daniel J. Olinghouse
Assistant U.S. Attorney

_____3/10/25_____
Date

_____
Luis Rafael Rivera, Esq.
Counsel for Defendant

_____3-26-25_____
Date

_____
Ligia Maria Lemus De Pentzke
Defendant

_____3-26-25_____
Date